JOURNAL ENTRY AND OPINION
Defendant-appellant Jawan Mosley appeals his conviction for felonious assault.
The victim in this case is a sixty-nine-year-old man who arrived at his girlfriend's daughter's house to babysit her five-year-old son. He had been at this home regularly for months doing repair work on it and was familiar with the children in the neighborhood. When he arrived, it appeared that no one was home; so when six-year-old Tahja Mosley approached his car, he told her to knock on the door to see whether anyone was home.
Instead, Tahja reached into his car and honked the horn. As the victim was getting out of the car, he had a cup of cold coffee in his hand along with his car keys. Tahja grabbed his keys and ran away laughing. The victim chased her around the car. As she was looking back at him, laughing, she accidentally ran into a tree. The victim caught up with her at this point and spilled coffee on her. She ran home crying and was taken to the hospital by ambulance.
The victim sat on the porch of the home where he was to babysit. About a half an hour later, the defendant and an unidentified woman walked toward the house. The woman walked up the drive of the house, while the man walked up the drive of the house next door, but they both came up the porch steps. Striking the victim in the head and shoulder with a baseball bat, the defendant said, "I'll kill you or fuck you up like you made my daughter get fucked up." Tr. at 45. The victim suffered a fractured arm and shoulder and serious injuries to his ear.
When questioned by police, the victim identified his assailant as a man whom he had seen down the street in Tahja's house. Several weeks after the attack and his release from the hospital, the victim identified the defendant from a photo array. At the time of the trial, seventeen months after the attack, the defendant had grown a full beard and wore glasses. When asked in court to identify his attacker, the victim stated, "I wouldn't be sure of him because he is wearing glasses." Tr. at 44. He did point out the defendant, however.
The defendant testified that he had never seen the victim before he met him at pretrial on this matter and had not been in contact with his daughter or her grandmother for months in the time frame of the attack. He claimed that the first time he was aware of the attack on the victim was when he was arrested.
After a bench trial the defendant was found guilty of felonious assault and sentenced to serve five years. Post-release control was not part of the sentence. He timely appealed.
Because the first and sixth assignments of error are interrelated, they will be addressed together.
 I. THE TRIAL COURT ERRED IN FINDING THAT THE VICTIM IDENTIFIED THE APPELLANT IN COURT AS HIS ASSAILANT.
 VI. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS THE IN-COURT IDENTIFICATION.
Although in his statement of error he objects only to the in-court identification, the defendant argues that both the in-court and out-of-court identifications were faulty and should be suppressed. First, the defendant claims that the victim could not positively identify him at trial; rather the victim said merely that the defendant looked very much like him. As previously noted, the defendant had grown a full beard and mustache since the attack and wore glasses at trial; thus his appearance had significantly changed. He argues that because this identification by the victim was not positive, the court should have excluded the in-court identification. The court clearly indicated that it considered the quality of the in-court identification limited. When the state requested that the record reflect that the victim had identified the defendant, the court added, "The record will reflect the nature of his identification." Tr. at 44. The trial court clearly indicated, therefore, that it was not strongly relying on the in-court identification.
The defendant also argues that the victim stated he was not sure the pictures he reviewed at trial were the same pictures he had seen on the day he identified the defendant from the photo array at the police station. The defendant further complains that his name was written on the back of the picture, so the victim could have been influenced by that in his identification. The victim had already testified, however, that he cannot read; this argument, therefore, is unpersuasive. The defendant also alleges that the pictures themselves were unduly suggestive because the size of the defendant's head was larger and the light was brighter and more yellow than in the other pictures. A review of the pictures shows that although they all appear to have been taken at different times, nothing in any of the pictures stands out so as to be prejudicial. He was unable to elicit testimony from either the victim or the detective to support this allegation, however. Finally, he argues that the victim could not have been able to identify the defendant because he was struck from behind.
"The law is clear that unreliable identification testimony is excludable under the due process standards of the United States Constitution." State v. Salwan (May 30, 1996), Cuyahoga App. No. 68713, unreported, 1996 Ohio App. LEXIS 2278, at *11. An identification will be considered unreliable when the police procedures used to elicit the identification are unduly suggestive. However, "[i]n order to suppress an out-of-court identification, the court must find that the procedure employed was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification." State v. Harris (Sept. 29, 1994), Cuyahoga App. No. 65681, unreported, 1994 Ohio App. LEXIS 4452, at * 8-9. In addition, it is the defendant and not the state who bears the burden of proof that the out-of-court identification was flawed. Id. at 9.
It is well settled that "reliability is the linchpin in determining the admissibility of identification testimony * * *." Manson v. Brathwaite
(1977), 432 U.S. 98, 114. The Manson court set out the factors to be considered in determining the reliability of an out-of-court identification. "These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." Id.
In the case at bar, the judge denied the motion to suppress the photo identification and subsequent in-court identification. He stated that the pictures shown to the victim were "a fairly-representative photo array * * *." He pointed out that the general characteristics of the men in all the photos were similar.
The court also noted that the witness was able to see the defendant at close range and, more importantly, had known him from the neighborhood. Thus the victim had ample opportunity to view the defendant.
The testimony showed, moreover, that the victim was paying close attention to the defendant at the time of the assault: he had, in fact, stood up to look for the defendant when the defendant walked up the drive past the house. Such special attention favors a reliable identification.
The next factor to consider is the accuracy of the victim's description of the defendant. The court specifically addressed this, stating, "even if he didn't give a description of the person, he gave enough to the Detective to allow him to produce a photo array." Tr. at 176. Rather than give a physical description of his attacker, the victim specified the relationship of the defendant to the little girl as the attacker had announced it, indicated where he had seen the defendant when he was in the neighborhood, and provided the detective with enough information to arrest the defendant.
Very important here, moreover, is the victim's degree of certainty in identifying the defendant. The detective's testimony showed that the victim picked out the defendant's picture from the photo array without any hesitation. As the detective noted, the victim had seen the defendant before. He was not, therefore, picking out the picture of a total stranger. In fact, the victim testified that he had spoken briefly with the defendant several months prior to the attack when he retrieved a ball from the girl's brother. The level of certainty in the out-of-court identification, therefore, was understandably high.
The defendant claims, however, that the in-court identification was suspect because the victim was uncertain: the victim stated that his attacker "looks very much like" the defendant in court. But there was a reasonable explanation: the defendant had substantially altered his appearance between the attack and the trial. The victim repeatedly pointed out that the glasses the defendant wore at the trial made him look different. Not only did the defendant add glasses to his appearance, he also grew a full beard and mustache. Thus the victim's hesitation over the defendant's change in appearance was understandable, and the court did not ignore the qualified nature of this later identification. On the other hand, the victim positively identified the defendant through the photo identification.
The final factor in the analysis is the lapse of time between the incident and the identification. Approximately six weeks elapsed before the victim viewed the photo array. However, because the victim knew the defendant by sight before the attack, this time lapse is of minimal consequence.
The trial court did not err in allowing the out-of-court and the in-court identifications of the defendant into evidence. Accordingly, the first and sixth assignments of error are overruled.
For his second assignment of error, the defendant states,
 II. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL AS THERE WAS INSUFFICIENT EVIDENCE TO PROVE EACH AND EVERY ELEMENT OF THE CRIME CHARGED BY PROOF BEYOND A REASONABLE DOUBT.
The defendant argues that the state failed to prove each material element of the crime of felonious assault. He fails, however, to specify which element or elements were not proven. Rather, he merely states that the evidence was not sufficient.
The state counters that it did prove all the elements of the crime, also without enumerating those elements or stating how they were proven.
The elements of felonious assault are:
 (A) No person shall knowingly do either of the following:
 (1) Cause serious physical harm to another or to another's unborn;
 (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.
R.C. 2903.11. No one denied that the victim suffered serious physical harm. Further, the issue of whether a baseball bat is a deadly weapon was never argued, and no one claimed that the blow to the victim's head was anything but intentional. The only question in this case is, as the court noted, the victim's "testimony as to the identification of the assailant." Tr. at 307.
The victim was not an ideal witness. He tended to ramble and had difficulty expressing himself. As the court noted, the victim "was unequivocal in stating it was the Defendant." Tr. at 307.
"Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman
(1978), 55 Ohio St.2d 261, Syllabus. The trial court held "for the purposes of the Rule 29 Motion, there is sufficient evidence for a reasonable trier of the facts to find the Defendant guilty of the crime of Felonious Assault." Tr. at 187. We agree.
The second assignment of error is overruled.
For his third assignment of error, the defendant states,
 III. THE APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
The defendant claims, "a review of the record clearly indicates that the jury lost its way and that Appellant's conviction is against the manifest weight of the evidence."[1] Appellant's brief at 14. The state replies that the defendant failed to refute the state's case and that "the record in this case points in one direction: that is an overwhelming support for the conviction of [the defendant]." Appellee brief at 7.
In a manifest weight argument, the appellate court "sits as a `thirteenth juror'" and if it reverses the trial court, "disagrees with the factfinder's resolution of the conflicting testimony." State v.Thompkins (1987), 78 Ohio St.3d 380, 387. The test for manifest weight differs from the test for sufficiency of the evidence.
 Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) Black's, supra, at 15.
Id.
The conflicting testimony in this case raised the question of who the assailant was. The victim positively identified the defendant as his attacker and explained the attacker was seeking revenge for an injury to his daughter. The defendant, on the other hand, denied even knowing about the incident until months after it occurred and claimed he had not been in the neighborhood for weeks before or after the incident. The defendant also produced witnesses who testified that he had not been in the neighborhood and had not been in contact with the family. These witnesses were not disinterested, however, because they were relatives of the defendant's daughter and girlfriend.
The factfinder is charged with determining the greater amount ofcredible evidence. Although the victim's disability made him a difficult witness, he was credible and consistent in his testimony. The defense witnesses had reason to be biased in their testimony, and the court was present to observe their credibility in person. The conflicting evidence in the case at bar certainly does not rise to the level of "the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983), 20 Ohio App.3d 172, 175. Resolving the conflicting testimony, we conclude, resulted in no "manifest miscarriage of justice" which would require reversal.
The third assignment of error is overruled.
For his fourth assignment of error, appellant states,
 IV. CUMULATIVE ERRORS DEPRIVED THE APPELLANT OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL.
The defendant argues that the allegedly improper in-court identification, the lack of evidence to overcome a presumption of innocence, and the fact that the conviction is against the manifest weight of the evidence are cumulative errors which require that the conviction be vacated. Because of this court's rulings on those issues in the prior assignments of error, this assignment of error is overruled.
For his fifth assignment of error, appellant states,
 V. THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO A TERM OF INCARCERATION IN EXCESS OF THE MINIMUM TERM.
The defendant argues that because he has no prior history of incarceration, he should have received the minimum sentence of two years. R.C. 2929.14(B) states in pertinent part,
 * * * if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
The Ohio Supreme Court interpreted the requirements of this statute inState v. Edmonson (1999), 86 Ohio St.3d 324 and concluded that "the court must note that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons." Id. at 326.
The trial court did engage in this analysis and made the required finding to give a longer than minimum sentence when it stated,
 I always have to balance things in sentencing. Based on the seriousness of the offense, there is no way I could be doing my job if I did not impose a prison sentence, and a significant prison sentence, as well.
 At the same time, the law normally requires a minimum sentence where a person has never been to prison before, unless there is some circumstances that make that inappropriate. And I find that that would be inappropriate here.
 Because you've never to be [sic] prison, I will not give you the maximum sentence. I will sentence you in the middle of the range. That will be to Lorain Correctional Institute for a term of five years * * *.
 [T]he seriousness of this unprovoked attack makes anything less than that demean the seriousness of the offense.
Tr. at 323-324.
The statute requires the court, when imposing more than the minimum sentence to a defendant who has never been in prison before, to make a finding that either the minimum sentence will demean the seriousness of the offense or will not adequately protect the public from future crime. The trial court met this criterion when it stated that sentencing the defendant to the minimum sentence would "demean the seriousness of the offense," which the judge described as an "unprovoked attack." Nothing more is required. The trial court, therefore, complied with the statute.
The fifth assignment of error is overruled.
The judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, P.J., and ANNE L. KILBANE, J., CONCUR.
[1] The defendant waived a jury trial. This case was tried to the bench.